UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN HORN,

       Plaintiff,                     Case No. 07-10116

v.                                   District Judge Nancy G. Edmunds
                                    Magistrate Judge R. Steven Whalen

BAY COUNTY SHERIFF'S
DEPARTMENT, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court are motions for summary judgment filed by Defendants Joseph Natole, Jr., M.D., Nurse Jody Doe, Nurse Amy Doe, and SecureCare, Inc. (the "SecureCare Defendants") [Docket #51] and by Defendants Bay County Sheriff's Department, Bay County Sheriff's Medical Facility, Captain Newt Jerome, and Sgt. Laura Redman (the "Bay County Defendants") [Docket #53].[1] These motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that both motions be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.

---

[1]The Bay County Defendants' motion includes a request to dismiss under Fed.R.Civ.P. 12(b)(6), as well as a request for summary judgment.

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stephen Lee Horn filed a *pro se* civil rights complaint on January 8, 2007, naming as a Defendant the Bay County Sheriff's Department Medical Facility, and claiming an Eighth Amendment violation based on inadequacy of medical treatment while he was a pretrial detainee at the Bay County Jail. On October 16, 2007, this Court granted in part and denied in part his motion to amend the complaint, as follows:

> "Plaintiff's motion to amend [Docket #19] is GRANTED as to the Fourteenth Amendment claims of deliberate indifference to the medical needs of a pretrial detainee against Defendants Amy Doe (Count I); Jody Doe, Capt. Newt Jerome and Sgt. Laura Redman (Count II); and Dr. Joseph Natole, Jr., M.D. (Count III).
>
> Plaintiff's motion to amend is GRANTED as to the claims of supervisory liability (re: deliberate indifference) against Defendants Bay County Sheriff (Count IV) and Secure Care, Inc. (Count V).
>
> Plaintiff's motion to amend is GRANTED as to the state law claim of gross negligence against Defendants Amy Doe, Jody Doe, Laura Redman, Newt Jerome, and Dr. Joseph Natole, Jr.
>
> In all other respects, Plaintiff's motion to amend is DENIED." [Docket #22]

The motion to amend was denied as to proposed claims under the Privileges and Immunities clause of the Constitution, the First and Fifth Amendments, and a state medical malpractice claim. The motion to add 10 "John and Jane Doe" defendants was also denied.

In December of 2005, Plaintiff was a pretrial detainee at the Bay County Jail. In his amended complaint filed on October 16, 2007 [Docket #25],[2] Plaintiff states that on

---

[2] Plaintiff filed another amended complaint on November 14, 2007 [Docket #30]. This appears to be identical to the amended complaint filed on October 16th, except that Plaintiff's

December 15, 2005, he complained a Nurse Amy L.N.U. about suffering from stomach pain. *Id.*, ¶ 5. He states that the nurse gave him some pills so that he would have a bowel movement. After taking the pills, he felt worse, and was seen by a Nurse Jody L.N.U., along with Sgt. Redman. He alleges that the nurse took his vital signs and proclaimed that he had the flu. *Id.*, ¶ 6. The Plaintiff states that on December 17th, he still felt horrible, and called for medical assistance. Nurse Jody responded. He told Jody he was in pain, and needed to go to the hospital. Nurse Jody told him to "kite" the doctor. *Id.*, ¶¶ 7-9.

Plaintiff alleges that on December 23, 2005, he was seen by Dr. Natole, who diagnosed GERD (gastro-esophogeal reflux disease) and prescribed Prilosec. However, on December 25, Plaintiff vomited blood and "fainted from the intense pain." *Id.*, ¶ 9(F). Plaintiff was taken to a hospital emergency room, and was admitted to the hospital, where he remained for five days. He was diagnosed with pancreatitis. *Id.*, ¶ 9(G) and (H).

Medical records from the Bay County Jail, submitted as Exhibit A with the SecureCare Defendants' motion [Docket #51], indicate that Plaintiff was first seen by a nurse on December 19, 2005, at 4:30 p.m. He told the nurse that he had "not been able to keep anything down for 3 days." His vital signs (temperature, respiration, pulse, blood pressure and pulse oximetry) were within normal limits.[3] His abdomen was soft, and bowel sounds

---

medical records are attached. Those records are also attached as exhibits to the two summary judgment motions and to the Plaintiff's response.

[3] Temperature was 98.6, pulse 68, blood pressure 128/68, and pulse-ox 98%.

were active.[4] The nurse ordered a clear liquid diet, and indicated that she needed to see an emesis.

The nurse saw the Plaintiff again later that day at 6:00 p.m., by which time he had produced a large emesis. Vital signs were still within normal range. The notes indicate, "will continue to monitor inmate. Placed on clear liquids for 24 hours."

Plaintiff was seen again the following day, December 20, 2005, at 12:30 p.m. The Nurse's Notes indicate that Plaintiff complained of epigastric pain and vomiting, and requested Tylenol. The nurse saw the Plaintiff again at 9:00 p.m. He complained that the middle of his abdomen hurt. His vital signs were normal at that time. The nurse instructed him to "try and move a little."

On December 23, Plaintiff was seen by Dr. Natole, who noted "belly pain." Dr. Natole diagnosed GERD and urethritis. He also prescribed Prilosec (to treat GERD) and two antibiotics, Doxycycline and Rocephin.

Attached to the Bay County Defendants' Motion [Docket #53] as Exhibit 5, and Plaintiff's Response [Docket #59] as Exhibit II, is a Bay County Jail incident report dated December 25, 2005, and signed by Officer Keith Reinhart. The report indicates that the control room received a call at approximately 1:50 a.m., that Plaintiff was "ill and vomiting." Officer Reinhart, who had "prior knowledge that inmate Horn [had] been sick for the past 7 or 8 days," and that he had "been seen by both nurse and doctor," took the Plaintiff to the

---

[4] This is normal. The absence of bowel sounds, on the other hand, may indicate an intestinal obstruction. http://cancerweb.ncl.ac.uk/omd.

medical room at the jail. When Plaintiff continued vomiting, Reinhart advised a Sgt. Rivet, who in turn contacted "Kathy" of the medical staff. Kathy reviewed the Plaintiff's chart and advised Rivet to have him transported to the hospital. Rivet called 911, and Plaintiff was taken to the hospital.

Both Defendants and Plaintiff have submitted records from the Bay Regional Medical Center, where Plaintiff was treated between December 25 and December 30, 2005. Plaintiff was first seen in the emergency room. The emergency services report, prepared by Dr. Kenneth Whiteside, indicates that the Plaintiff presented "in no acute distress," with normal vital signs. There was mild tenderness in the abdomen, but a CT scan of the abdomen "showed no significant abnormalities." Laboratory tests showed normal blood count and blood chemistry, except for elevated levels of amylase and lipase, enzymes associated with pancreatic function. Plaintiff was placed on an IV, with Reglan and Nubain for pain, and admitted to the hospital with a diagnosis was "acute abdominal pain with pancreatitis."

Following admission to the hospital, Plaintiff was given a physical examination, with a diagnosis of new onset pancreatitis of "unclear etiology." He was seen by Dr. Abdul Islam, a gastroenterologist, who observed that Plaintiff "presented with what appears to be epigastric abdominal pain without any specific radiation." He noted that amylase and lipase levels were "mildly elevated," and recommended treatment with IV fluids and pain medication, although he suggested careful use of the latter.

Radiographic studies of Plaintiff's abdomen and pelvis, including scans of the liver, gall bladder, kidneys and pancreas, were all normal. In the discharge summary, Dr. Potts,

referring to the Plaintiff's treatment at the jail, wrote, "It was thought a viral gastroenteritis but the patient did not respond to conservative treatment. For this reason, he was brought to the emergency room."

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. V. Twombley,*—U.S.—, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court set forth what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. The Court held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire*

*Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is *plausible* on its face." *Bell Atlantic*, at 1974 (emphasis added).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing

party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

#### A. The SecureCare Defendants [Docket #51]

##### 1. State Action

The SecureCare Defendants argue that they have no liability under 42 U.S.C. §1983 because SecureCare is a private corporation and Defendant Dr. Natole is "an independent contractor with SecureCare." Thus, they claim, they are not "acting under color of state law," an essential element of a §1983 claim. *See Waters v. city of Morristown*, 242 F.3d 353 (6th Cir. 2001).

SecureCare contracts with Bay County to provide medical services to jail inmates. That company, and the physicians whom they employ or contract, are serving a state function. The inquiry in determining whether a private party is a "state actor" is whether their actions are "fairly attributable to the state." *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). The Supreme Court in *West v. Atkins*, 487 U.S. 42, 55-56, 108 S.Ct. 2250, 101

L.Ed.2d 40 (1988), held that private medical contractors such as those employed or contracted by SecureCare are state actors for purposes of § 1983:

> "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State .... The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract."

*See also Flint ex rel. Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 -352 (6th Cir. 2001).

Thus, the SecureCare Defendants may be considered state actors, and the Court may proceed to the merits of Plaintiff's claims under §1983.

### 2. Deliberate Indifference

Pretrial detainees have a constitutional right to medical care. *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985). Although pretrial detainees' rights are analyzed under the Fourteenth Amendment's Due Process Clause, they are completely analogous to the Eighth Amendment rights of prisoners, *Barber v. City of Salem, Ohio,* 953 F.2d 232, 235 (6th Cir. 1992), in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts,* 773 F.2d at 723. Hence, pretrial detainees have a Due Process right to receive medical care, which can be analyzed under an Eight Amendment paradigm. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1096 (6th Cir. 1992).

Under the Eighth and Fourteenth Amendments, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429

U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

The Plaintiff in this case meets the objective component of the *Farmer* test, that is, he suffered from the "sufficiently serious" medical condition of pancreatitis, which appears to have manifested itself by abdominal pain and vomiting. However, his claim falters on the subjective prong of the test. Even drawing all inferences in the Plaintiff's favor, it cannot be

-10-

said that the medical personnel, including Dr. Natole, Nurse Jody and Nurse Amy, disregarded his condition or placed him at substantial risk. By his own admission, Plaintiff was seen on December 15th by Nurse Amy and later by Nurse Jody, was examined, and was given medication. At that time, the nurses believed he had the flu. Plaintiff states that Nurse Jody saw him again on December 17th, and advised him to "kite" the doctor. On December 19th and 20th, Plaintiff was again seen by the nurse, who, finding normal vital signs, prescribed a liquid diet for 24 hours, based on the symptoms. When Dr. Natole saw the Plaintiff on December 23rd, he diagnosed–apparently incorrectly–GERD and urethritis, and prescribed medication, based on the symptoms he observed. When it became apparent on December 25th that the symptoms of pain and vomiting continued despite the conservative treatment, Plaintiff was taken to the hospital emergency room.

Of course, it would have been to Plaintiff's advantage if his serum amylase and lipase levels had been taken while at the jail. This appears to have been the only way the diagnosis of pancreatitis was confirmed, since at the hospital, the Plaintiff's vital signs, radiographic studies, blood chemistry and hematological tests were all normal. However, under the constitutional standard, the test is not whether the Plaintiff received optimal care, but whether the Defendants were deliberately indifferent. Here, the SecureCare Defendants responded to the Plaintiff's complaints, conducted physical examinations, and rendered conservative treatment in the form of diet and medication based on their examinations. As noted in the hospital discharge summary, when this conservative treatment did not alleviate the symptoms, the Plaintiff was taken to the emergency room. Thus, *Borretti v. Wiscomb*, 930

F.2d 1150 (6th Cir. 1991), cited by the Plaintiff, is distinguishable. In *Borretti*, the plaintiff made several requests for medical attention to a wound, but was given no treatment whatsoever. More to the point is *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986), cited in *Borretti*, where the Supreme Court held:

> "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. This reading of the Clause underlies our decision in *Estelle v. Gamble, supra,* [429 U.S.] at 105-106 [97 S.Ct. at 291-92], which held that a prison physician's "negligen[ce] in diagnosing or treating a medical condition" did not suffice to make out a claim of cruel and unusual punishment. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."

The point is that the Defendants responded reasonably, if ineffectively, to the Plaintiff's medical complaints. *See Farmer v. Brennan, supra*, 114 S.Ct. at 1982-83 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). At most, Plaintiff's claim goes to the adequacy of treatment, which is not actionable under §1983.[5] *Westlake v. Lucas, supra*; *Sanderfer v. Nichols, supra*.

---

[5]The Court denied Plaintiff's motion to amend his complaint to add a medical malpractice claim, because he did not comply with the procedural requirements for bringing such an action under Michigan law. *See* Order, Docket #22 ("However, 'Plaintiff[] ha[s] failed to produce an affidavit of merit in support of [his] malpractice claim and failed to identify an expert to testify on [his] behalf who can satisfy the requirements of the Michigan medical malpractice law.' *Tran v. Michigan Dept. of Human Services* 2006 WL 3782792, *7 (E.D.Mich., 2006)(unpublished), citing *McCafery v. St. Joseph Mercy Hosp.,* 2000 WL 1279159 (E.D.Mich. Aug.15, 2000) (unpublished). Therefore, the motion to amend as to the state medical malpractice claim will be DENIED.").

Accordingly, the Fourteenth Amendment deliberate indifference claim against the Amy Doe, Jody Doe and Dr. Natale must be dismissed.

Likewise, the Fourteenth Amendment claim against SecureCare, based on supervisory liability, must be dismissed. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court specifically held that in a §1983 action, liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability. *See also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)(at a minimum, a § 1983 plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate). In the present case, the lack of supervisory liability is even more obvious, in that there is no underlying constitutional violation on the part of SecureCare's employees and contractors.

### 3. Gross Negligence

Plaintiff also brings a state law claim of gross negligence against Defendants Natole, Jody Doe and Amy Doe.

Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. §691.1407(2)(c); *Maiden v. Rozwood*, 461 Mich. 109, 122, 597 N.W.2d 817 (1999). This is an extremely difficult standard to meet, and ordinary negligence or carelessness will not suffice. In *Tarlea v. Crabtree*, 263 Mich.App. 80, 90-92, 687 N.W.2d 333 (2004), the court described "gross negligence" as follows:

"Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.

"The much less demanding standard of care-gross negligence-suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge."

Thus, even if it can be said that the medical personnel at the jail could have done more–for example, by ordering blood tests for pancreatic enzymes–they did examine the Plaintiff and render care based on their examination. No objective observer could conclude that they were grossly negligent.

### B. The Bay County Defendants

#### 1. Deliberate Indifference

Plaintiff brings a Fourteenth Amendment deliberate indifference claim against Capt. Newt Jerome and Sgt. Laura Redman of the Bay County Sheriff's Department. Both are described in the amended complaint as "supervising officers." This is the only statement in the complaint regarding Defendant Jerome; he is not otherwise alleged to have done anything. Plaintiff also claims that the Bay County Sheriff's Department and the Bay County Sheriff's Medical Facility have supervisory liability.[6]

---

[6]The Bay County Sheriff's Department and its Medical Facility are not, by themselves, entities subject to suit. Rather, they are creatures of Bay County, which would be the real party in interest. *See Vine v. County of Ingham,* 884 F.Supp. 1153, 1158

Pursuant to *Monell, supra*, none of the Bay County Defendants have supervisory or *respondeat superior* liability under §1983. Plaintiff has not shown that the Bay County Sheriff's Department has any policy or custom, written or unwritten, that would have the effect of denying the constitutional rights of inmates. Indeed, as discussed in the preceding section, there *was* no Fourteenth Amendment violation in this case.

As to Sgt. Redman, the complaint merely alleges that on December 15, 2005, she was with Nurse Jody and helped take Plaintiff's vital signs. At the conclusion of the examination, she told the Plaintiff that he had the flu. It is difficult to see how this offhand comment could be construed as "deliberate indifference," especially given that Plaintiff had follow-up examinations by nurses and doctors on December 17, 19, 20 and 23, and was sent to the hospital on December 25. For the same reasons discussed with regard to the SecureCare Defendants, the claim of deliberate indifference against Sgt. Redman must be dismissed.

## 2. Gross Negligence

For the reasons discussed in sec. III-A-3, *supra*, the claim of gross negligence against the Bay County Defendants must be dismissed.

## C. Other Claims

In his amended complaint, Plaintiff has also brought claims under the Privileges and Immunities Clause, the First and Fifth Amendments, and a state medical malpractice claim. He also names 10 "John Doe" and "Jane Doe" Defendants. However, this Court explicitly

---

(W.D.Mich.1995); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 992, fn. 1 (6th Cir. 1994).

denied Plaintiff's motion to amend his complaint with regard to these claims. They are not properly before the Court, and must therefore be dismissed.

## D. Exhaustion

Both the SecureCare Defendants and the Bay County Defendants seek dismissal on the ground that Plaintiff failed to exhaust his administrative remedies before filing his complaint. Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 819, 149 L.Ed.2d 958 (2001). Where there is a failure to exhaust, the court will not reach the merits of the complaint; rather, the complaint will be dismissed without prejudice.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* --- U.S. ----, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.* at 921. *Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

In arguing for dismissal based on non-exhaustion, all Defendants in this case improperly shift the burden of pleading and proving exhaustion to the Plaintiff. The

-16-

SecureCare Defendants' motion for summary judgment [Docket #51], at p. 16, criticizes documentation that was attached to Plaintiff's complaint, and states, erroneously, "Plaintiff is required to show that the administrative remedies were pursued against each Defendant. There is no information that grievances regarding the conduct of Dr. Natole or the nurses was filed." Likewise, the Bay County Defendants, at pp. 3-4 of their motion [Docket #53], state, "Plaintiff fails to demonstrate that he exhausted his administrative remedies under the [PLRA]....Specifically, Plaintiff fails to provide proof of completed administrative processes regarding any of the claims he directs at the Bay City Defendants."

Under *Jones v. Bock*, Plaintiff clearly is *not* required to demonstrate exhaustion. It is the Defendants' burden to support non-exhaustion as an affirmative defense, and they have failed to do so. They have not even described the grievance procedure at the Bay County Jail, much less provided any evidence, in the form of jail records, affidavits or otherwise, to show that Plaintiff failed to comply with any available grievance process. Therefore, Defendants' exhaustion arguments must be rejected, and the Court may review the merits of the complaint. This is, of course, a pyrrhic victory for the Plaintiff, in that his complaint must now be dismissed with prejudice rather than without prejudice.

## IV.    CONCLUSION

I recommend that the motions for summary judgment filed by Defendants Joseph Natole, Jr., M.D., Nurse Jody Doe, Nurse Amy Doe, and SecureCare, Inc. [Docket #51] and by Defendants Bay County Sheriff's Department, Bay County Sheriff's Medical Facility, Captain Newt Jerome, and Sgt. Laura Redman [Docket #53] be GRANTED, and the

Complaint DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 2, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 2, 2008.

                    S/G. Wilson
                    Judicial Assistant